Mr. Chief Justice Sharkey
delivered the opinion of the court.
The bill was filed to enjoin defendant from setting up a defence at law, in a suit brought against him by complainants, and from the decision of the chancellor sustaining a demurrer to the bill, this appeal was taken.
The defence sought to be enjoined arises out of a special contract, made between the defendant and one Flowers, who had indorsed the notes sued on to the testator of the plaintiffs. Flowers sold a tract of land to the defendant for $5000, and procured a title to be made by Harman in whom the legal title then was, under which defendant took possession, and has continued to hold it. Flowers, at the time he sold to defendant, or after-wards, made a written agreement to this effect, “ That if the land should at any time he seized or sold under execution on judgments, either against Harman or himself, he would refund to defendant any money he might have received from him on the notes, and would give up such of the notes as might remain unpaid.”
*555 Flowers sold the land to defendant in 1840, and it was after-wards levied on and sold by the'sheriff of Claiborne county for $120, under an execution which issued on a judgment against Harman for $448. The contract of Flowers is now set up as a defence to a suit on three of the notes.
If the defendant had lost the land by the sheriff’s sale, this contract would have afforded him protection against the payment of the purchase-money. But it is alleged, that the land was purchased, at the sheriff’s sale by the attorney of the plaintiff in execution, to whom defendant applied, very-soon after the sale, to be substituted in his stead as purchaser, which the attorney agreed to, on condition that the whole amount of the judgment should be paid off. Defendant acceded to this proposition, made the payment, and directed the sheriff to make a deed to Harding, which was done, and Harding afterwards conveyed to defendant, without either having given or received any consideration. The bill is very vague on this branch of the case; had it been more specific and certain, much of the difficulty which arises in reference to the conduct of the defendant might have been obviated. If defendant was substituted as purchaser at the sheriff’s sale, he must have been present at the sale, and the substitution must have taken place before the sale was consummated. The defendant must be regarded as-the purchaser at sheriff’s sale. The fact may in truth be otherwise, but the allegations in the bill will not warrant a different conclusion; then what is his condition ?
It is worthy of remark, in the first place, that the defendant was a purchaser from Flowers, with notice of the judgment incumbrance. As against Harman, he had no other protection than such as was afforded by the covenants in the deed, but they were not binding on Flowers, and this contract was given as a cumulative security. It was taken in view of existing incumbrances, and was intended to protect the defendant against loss. In agreeing to refund if the land should be sold, we can only understand the party as providing for the contingency of a loss by such sale. The possibility of a purchase by the defendant at such sale, or an extinguishment of incumbrances by him, *556 was a contingency that was overlooked, and not provided for hy the terms of the contract. The contingency, however, has happened, and the question is, How does it affect the rights of the parties'? The defendant is the vendee of Flowers. In that capacity his defence arises under a special contract. The principle is well settled, that a vendee will not be permitted to buy in incumbrances, and set up an adverse title under them against his vendor. 2 Johns. Ch. Rep. 30; Sugden on Yendors, 567 ; Harper v. Reno, Freeman’s Ch. Rep. 323; Hardeman v. Cowan, 10 S. & M. 486. In this instance we can regard the defendant in no other light than as purchaser of the incumbrance. He did not bid, it is true, but was substituted to the bid, and at his request the conveyance was made to Harding, whose name must have been introduced into the transaction only for the purpose of disguising its true character. The case is in all respects like that of Harper v. Reno, above cited. The case of Hardeman v. Cowan, covers every principle involved in this case. Land was sold by Cowen to Hardeman, which was subject to judgments, and it was afterwards sold under execution. It was purchased by a brother of Mrs. Hardeman, for her benefit. The purchaser paid with his own money. On bill by Hardeman to rescind, and a cross-bill for a specific performance, it was decided that the title acquired by Mrs. Hardeman could not be set up in opposition to the vendor; that it was in effect but a purchase of an outstanding title, which only entitled the vendee to the repayment of the money laid out. The vendee is here, as in Hardeman v. Cowan, endeavoring to set up an incumbrance of which he had notice, and here, as in that case, the title comes nominally through a third party; the consideration, however, passed from the defendant, which makes the case even stronger against him than was the case against Hardeman.
It is a principle of equity jurisprudence, then, that a vendee cannot buy the land under an outstanding incumbrance, and set up an adverse title; he can only claim to be refunded the amount paid by him. If he should claim more than this, a court of equity would interpose to prevent a recovery. The defendant, however, sets up a special contract, and claims un *557 der it a right to resist the payment of the purchase-money. That he should not be permitted to claim more than an abate- ■ ment equal to the amount paid by him, is, under the circumstances, most obviously true; but is the interposition of a court of chancery necessary to restrain him, or may the court of law, in which the defence is made, accomplish the some thing? This question is one of considerable difficulty. The respective claims for jurisdiction are very nearly balanced. A party may be enjoined from setting up a defence at law, on the same principle that will prohibit him from setting up an unconscientious demand, if the court of law cannot exclude the defence, or give it a proper limit. The condition of the contract has been forfeited, the land was sold under execution, and, by the terms of the contract, the notes should be given up. The intention of the parties may be very questionable; it seems to have been intended as a mere contract of indemnity, yet it is more in terms, and courts of law cannot generally so enlarge the contract by construction which is not expressed. Courts of equity, too, must be governed by the real contract; but it is said they may examine it, not merely as a court of law does, to ascertain what the parties have in terms expressed to be the contract, but what is in truth the real intention of the parties, and carry that out. But in so doing, they must look carefully at what the parties have expressed, because in general they must be taken to have expressed what they meant. Liddell v. Sims, 9 S. & M. 596. But though it be true that a court of chancery cannot depart from the terms of a contract so as to vary it, yet it may go further than a court of law in mitigating the consequences of a breach of contract, and it may reach and condemn the means by which one party has obtained the advantage of another. On the contract of vendor and vendee, it raises a confidential relation, and imposes corresponding duties, which will be enforced against an advantage at law. It will not allow the vendee to avail himself of his legal title acquired under an outstanding incumbrance, although he might do so in a court of law, where legal titles only are recognized. On a bill by the defendant to rescind this contract, a court of chancery would assuredly re *558 fuse its aid. It ought not, therefore, to allow the same thing to be virtually accomplished in a court of law. After the contract was made, the defendant seems to have shaped his conduct so as to bring the case within the letter by disregarding the rights of the vendor. The remedy in chancery, moreover, recommends itself by being more certain, and more ample and complete. For these reasons, we think it is the proper tribunal to take cognizance of the question. ■ If the defendant, by answer, can place the case in a different aspect, he may make his defence' available. The decree must be reversed, the injunction reinstated, and the case remanded.